Johnnie L. EVANS, Plaintiff–Appellant,

v.

McDONALD'S CORPORATION, a Delaware corporation; McDonald's of Claremore, a defunct Oklahoma corporation; David McMahan, Defendants–Appellees.

No. 90–5013.

United States Court of Appeals, Tenth Circuit.

April 9, 1991.

Steven M. Dickson, of Dickson & Pope, P.A., Topeka, Kan., and Leslie Shelton, Tulsa, Okl., for plaintiff-appellant.

Patrick M. Ryan and Charles E. Geister III, of Ryan, Corbyn & Geister, Oklahoma City, Okl., for defendant-appellee McDonald's Corp.

Benjamin J. Butts (Short, Barnes, Wiggins, Margo & Adler, of counsel), Oklahoma City, Okl., for Defendant–Appellee David McMahan.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Johnnie L. Evans appeals from a district court order granting summary judgment to defendants David McMahan and McDonald's Corporation on her Title VII claims and dismissing her pendent state claims.[1] Evans managed two McDonald's restaurants. She managed the first, located in Wellston, Oklahoma, until December 1986, when she was transferred to the second, located in Claremore, Oklahoma. Both restaurants were owned and

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

operated by Everett Allen, a McDonald's franchisee. Evans alleged that she was sexually harassed by David McMahan, beginning while she was employed at the Wellston restaurant and continuing into her employment at the Claremore restaurant. McMahan was employed at the time by McDonald's Corporation as a consultant.

Evans filed a complaint with the EEOC and the Oklahoma Human Rights Commission (OHRC). The following month, Allen sold his McDonald's franchises to McDonald's Corporation. McDonald's did not retain Evans, although almost all other Claremore location employees were retained. Evans subsequently amended her EEOC/OHRC complaint to allege retaliatory discharge. She received a Notice of Right to Sue from the EEOC.

Evans filed this lawsuit against McDonald's Corporation, David McMahan, and McDonald's of Claremore [2] as defendants. Her amended complaint alleged sexual harassment in violation of 42 U.S.C. §§ 2000e through 2000e–17 (Title VII of the Civil Rights Act of 1964). She also asserted several pendent state law claims. On motion by remaining defendants McDonald's and McMahan the district court granted summary judgment to defendants on Evans' sexual harassment claims, based on its conclusion that defendants were not Evans' employers. The district court dismissed Evans' pendent state claims.

On appeal, Evans argues that summary judgment is inappropriate because the determination whether defendants were her employers is a question of fact. She also contends the district court erred in failing to consider her claim for retaliatory failure to hire and her claim that McDonald's acquired liability for this suit by purchasing Everett Allen's franchises. She does not appeal the district court's dismissal of her pendent state law claims.

We review de novo the district court's grant of summary judgment. *Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir.),

*cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). We construe the alleged facts in the light most favorable to the non-moving party. *See id.*

■ We hold that under no plausible legal theory are defendants Evans' employers. Evans essentially concedes that, under either common law or the "economic realities" test, defendants are not her immediate employers. Appellant's Brief at 2–3. *See Wheeler*, 825 F.2d at 268–71 (discussing elements to be considered under common law and "economic realities" test in determining whether employer/employee relationship exists for Title VII purposes); *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir.1986); *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981–82 (4th Cir.1983); *see also Kennedy v. McDonald's Corp.*, 610 F.Supp. 203, 204–05 (S.D.W.Va. 1985) (same, in franchise setting).

Evans, however, urges us to consider a line of cases in which courts have found that two entities' "activities, operations, ownership and management are sufficiently interrelated to be perceived as a single employer for purposes of Title VII." *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir.1987); *see, e.g., EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 572 (6th Cir.1984); *Armbruster v. Quinn*, 711 F.2d 1332, 1337–38 (6th Cir.1983); *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391–92 (8th Cir.1977); *Carter v. Shop Rite Foods, Inc.*, 470 F.Supp. 1150, 1160 (N.D. Tex.1979). In these and other cases, courts struggling with the definition of "employer" under Title VII have turned for guidance to a test promulgated by the National Labor Relations Board. *McKenzie*, 834 F.2d at 933. Under this test, the factors to be considered are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Id.*

---

**2.** McDonald's of Claremore is apparently no longer a party. The district court, in its Order dated December 7, 1989, stated: "Defendant McDonald's of Claremore has previously been determined to no longer be a viable entity and thus is not a party to this action." I.R. tab. 118 at 1.

We need not decide whether to adopt the reasoning of *McKenzie* and like cases, because Evans cannot sustain a cause of action even under the theory she advances.[3] Evans contends that, when these factors are considered, the ultimate issue—whether defendants are Evans' employers—is a question of fact precluding summary judgment. Appellant's Brief at 3. On the contrary, the essential facts underlying determination of this issue are undisputed. Even were we to assume the existence of an interrelation of operations, given the common goals and interaction of McDonald's and its independent franchises, the record before us indicates no common management, no centralized control of labor relations, and no common ownership or financial control. Evans does not controvert the facts contained in the record before us regarding the independent ownership, labor relations, and financial control of McDonald's franchises. Considering the NLRB factors in light of the record before us, we conclude that defendants cannot be consolidated with Everett Allen's franchises as one employer for Title VII purposes.

Evans contends that control is the key issue in determining an employer/employee relationship, and alleges that McDonald's exerted "monumental control" over the operations of Everett Allen's franchises. Control is, we agree, an important factor in any determination of this issue. *See Wheeler*, 825 F.2d at 270 (control over details and results of worker's performance is the most important factor in determining employer/employee relationship). In this case McDonald's did not exert the type of control that would make it liable as an employer under Title VII. McDonald's may have stringently controlled the manner of its franchisee's operations, conducted frequent inspections, and provided training for franchise employees. The record also indicates, however, that McDonald's did not have control over Everett Allen's labor relations with his franchise employees. *See Armbruster*, 711 F.2d at 1337–38 (control over elements of labor relations is a central concern); *Carter*, 470 F.Supp. at 1161 (without control over labor relations, stringent control over details of independent operators did not make defendant an employer of operator's employees). McDonald's did not have financial control over Everett Allen's franchises. Outside of the necessary control over conformity to standard operational details inherent in many franchise settings, McDonald's only real control over Everett Allen was its power to terminate his franchises. Thus, on the record before us, we hold, as a matter of law, that McDonald's did not have the control over Everett Allen's franchises necessary to make it liable as an employer of Everett Allen's employees under Title VII.

Evans further argues that she raised a claim of retaliatory failure to hire as a separate issue from her retaliatory discharge claim.[4] She contends that the issue was not disposed of by the court's summary judgment ruling and that the court's failure to address it was error. McDonald's asserts that the retaliatory failure to hire claim was not properly before the district court because it was not raised in Evans' amended complaint.

In her amended complaint, Evans contended that McDonald's failed to retain her in retaliation for bringing a Title VII action. She characterized the failure to retain as a retaliatory discharge, a characterization consistent with her theory that McDonald's was her employer. It was not until her response brief to McDonald's summary judgment motion that Evans characterized her retaliation claim as one for failure to hire.

As a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, "provided always that a

---

3. In *Wheeler,* we stated that we would use an economic realities test in determining employer/employee relationships under Title VII "but only where and to the extent appropriate." 825 F.2d at 271. We do not decide today whether a Title VII action by a franchise employee against the franchisor requires application of the economic realities test.

4. The district court properly ruled that Evans' claim for retaliatory *discharge* was disposed of by its conclusion that the defendants were not Evans' employers. I R. tab. 118 at 2.

late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits." 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1219 at 194 (1990); *see, e.g., Hanson v. Hoffmann,* 628 F.2d 42, 53 n. 11 (D.C.Cir. 1980). The purpose of "fact pleading," as provided by Fed.R.Civ.P. 8(a)(2), is to give the defendant fair notice of the claims against him without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the parties have opportunity for discovery. *See* Wright & Miller, §§ 1215, 1219, at 136–147, 188–194.

 We do not believe, however, that the liberalized pleading rules permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case. This practice, if permitted, would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances.

Evans first characterized the failure to retain as a retaliatory discharge. In fact, her entire case was premised on the theory that McDonald's was her employer, and several months of discovery centered around the theory. Nearly eight months after Evans filed her amended complaint, she attempted to change her theory, arguing that even if McDonald's was not her employer, it ought to be liable for failure to hire. Her new theory was presented just two weeks before the scheduled trial date, in her response to McDonald's motion for summary judgment. *See Gulf Oil Trading Co. v. M/V Caribe Mar,* 757 F.2d 743, 751–52 (5th Cir.1985) (court properly exercised discretion in denying plaintiff's mo-

tion to amend complaint with completely new theory of recovery three weeks before trial because of prejudice to defendants and delay in proceedings). Moreover, although Evans' new argument—based on a failure to hire a new employee in retaliation for that prospective employee's prior filing of an EEOC complaint—is one that has been recognized by the courts, is sufficiently unique, as applied to the facts of this case, that we believe the late shift in theories caused substantial prejudice to McDonald's. The district court's opinion does not discuss the issue at all, from which we must conclude that it did not regard the issue as properly before it.[5] We do not find the district court committed error in refusing to treat this new claim. *See Fisher v. Metropolitan Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir.1990) (claim raised not in amended complaint but, rather, in plaintiff's response to defendant's motion for summary judgment was not properly before district court).

 Finally, Evans contends that McDonald's Corporation bought liability for this suit when it purchased Everett Allen's franchises. No reading of Evans' first amended complaint supports a conclusion that this issue was raised in any manner before her response to McDonald's summary judgment motion. For essentially the reasons stated above, we hold that the district court did not err in failing to consider this issue; it was not properly before the district court. *See id.* at 1078.

Summary judgment for defendants David McMahan and McDonald's Corporation is AFFIRMED.

---

Essentially the only reported cases against a non-employer that have succeeded have been against former employers who urged another not to hire the plaintiff because of the plaintiff's suits against the former employer. *See Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527 (11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 353, 112 L.Ed.2d 317 (1990); *Rutherford v. American Bank of Commerce,* 565 F.2d 1162 (10th Cir.1977). In neither of the two reported cases we have found involving suit against a prospective employer, *Wrenn v. Gould,* 808 F.2d

493 (6th Cir.1987), and *Fahie v. New York City Dep't of Correction,* 737 F.Supp. 15 (S.D.N.Y. 1990), did the plaintiff succeed on the merits. *But see Storey v. City of Sparta Police Dep't,* 667 F.Supp. 1164 (M.D.Tenn.1987) (threat to sue the prospective employer if not hired). We have seen no case in which the plaintiff had unsuccessfully sued a non-employer under Title VII, and when that non-employer would not hire the plaintiff it was sued for retaliatory failure to hire—the situation before us.