**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 14 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MELINDA SEELY,

      Plaintiff-Appellant,

v.

MARVIN G. RUNYON, Postmaster
General, United States Postal Service,

      Defendant-Appellee.

No. 97-4117
(D.C. No. 95-CV-279-W)
(District of Utah)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, Circuit Judge, **ANDERSON**, Circuit Judge, and **McWILLIAMS**,
Senior Circuit Judge

Melinda Seely ("Seely") was employed by the United States Postal Service in

December, 1965, and thereafter continued such employment until October 2, 1992, when

she elected to take "early out retirement." On March 27, 1995, Seely filed a "Verified

Complaint" in the United States District Court for the District of Utah, naming as the

defendant Marvin G. Runyon, Postmaster General, United States Postal Service.

On December 4, 1995, Seely filed a "First Amended Complaint." In that

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3

complaint, Seely stated that she is a resident of Salt Lake County, State of Utah, that she is "a female over the age of 40, and is not a member of the LDS religion, and is a member of a protected class pursuant to 42 U.S.C. § 2000(e)(2) and 29 U.S.C. § 623." Under the heading of "General Allegations," Seely set forth, in considerable detail, the chronology of events between herself and her supervisors, in particular, one David Meisner, which she said led to her "resignation" on October 2, 1992.

Based on her so-called "general allegations," Seely alleged three separate causes of action. The first two were based on violations of 42 U.S.C. § 2000(e)(2)(a), with the first being based on "[d]efendant's conduct in reassigning and demoting the plaintiff," which, according to Seely, was "motivated by the plaintiff's gender. . . ." The second cause of action, pursuant again to 42 U.S.C. § 2000(e)(2)(a), was also based on a reassignment and demotion, which she said was "motivated by [her] religion." The third cause of action was based on 29 U.S.C. § 623, and in that cause of action Seely alleged that she had been reassigned and demoted, this time, because of her age. For those wrongs, Seely asked for general and special damages in an unspecified amount "to be proven at trial" and attorney's fees and costs.

On April 8, 1996, Runyon filed his answer to the first amended complaint, in which he either admitted or denied the various allegations contained therein, and affirmatively alleged that the Postal Service had not "discriminated against plaintiff in any prohibited way and had legitimate, non-discriminatory motives for its actions

affecting her."

On March 21, 1997, after discovery, Runyon filed a motion for summary judgment. In that motion, counsel alleged that in her deposition Seely admitted that she had not been either reassigned or demoted and that "[w]ithout showing an adverse employment decision that affected her, plaintiff is unable to make a prima facie case of discrimination based on gender, age or religion."

On April 21, 1997, Seely filed a response to the defendant's motion for summary judgment.[1] In that response, counsel alleged that there was a "factual dispute regarding whether plaintiff was reassigned and/or demoted by the post office." Counsel went on to allege in her response that there had also been set forth in the First Amended Complaint numerous other acts of employment discrimination on the part of her supervisors, including threats, harassment, intimidation, and the like. And counsel then suggested in her response that under "notice" pleading, the factual allegations in the First Amended Complaint were sufficient to support a claim for "constructive discharge" and "retaliation," even though neither had been specifically pleaded in the First Amended Complaint. In connection with the latter, she also asked the court to allow her to amend the First Amended Complaint to "conform to the evidence." On May 5, 1997, the defendant filed a reply in opposition to Seely's response to his motion for summary

---

[1]By this time Seely was represented by different counsel than the attorney who had filed her original and amended complaints, he having apparently moved from Utah.

judgment.  This was the posture of the case when the district court, after hearing, granted

the motion and dismissed the action with prejudice on May 28, 1997.

The district court's order granting defendant's motion for summary judgment

appears as *Seely v. Runyon,* 966 F.Supp. 1060 (D.C. Utah 1997).  In its order the district

court noted that, because of supervisory dissatisfaction with Seely's job performance, she

was temporarily reassigned to a 90-day retraining program, at which time she was to

return to her former position, or a comparable one, and that her rate of pay, title, benefits,

and the like, remained the same during the 90-day period.  However, shortly before the

90-day period was to expire, Seely opted for an "early out" retirement.  In this regard, as

we understand it, Seely received a lump sum settlement as well as retaining certain

insurance benefits.  It would appear Seely has since accepted other employment.  In any

event, the district court concluded that Seely's 90-day assignment to a retraining program

did not constitute "adverse employment action," as required by both 42 U.S.C. §

2000(e)(2)(a)(1) and 29 U.S.C. § 623(a)(1).  In so doing, the district court cited, *inter*

*alia, Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270 (7th Cir. 1996), where the

Seventh Circuit spoke as follows:

> Obviously a purely lateral transfer, that is, a transfer
> that does not involve a demotion in form or substance, cannot
> rise to the level of a materially adverse employment action.  A
> transfer involving no reduction in pay and no more than a
> minor change in working conditions will not do, either.
> Otherwise every trivial personnel action that an irritable, chip-
> on-the-shoulder employee did not like would form the basis of
> a discrimination suit.  The Equal Employment Opportunity

Commission, already staggering under an avalanche of filings too heavy for it to cope with, would be crushed, and serious complaints would be lost among the trivial. *Id.* at 273-74 (citations omitted).

As to the suggestion that threats, harassment, and the like, added up to "adverse employment action," the district court held that "not everything that makes an employee unhappy is an actionable adverse action." *Seely v. Runyon,* 966 F. Supp. at 1064. It was on this general basis, then, that the district court granted Runyon's motion for summary judgment and dismissed the amended complaint with prejudice. At the same time the district court denied Seely's motion to amend to "conform to the evidence."

On appeal, counsel's basic argument is that the district court, in granting Runyon's motion for summary judgment, failed to view the record in a light most favorable to the non-moving party, citing *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). Further, counsel points out that in *Hardin v. Hussmann Corp.,* 45 F.3d 262, (8th Cir. 1995), the Eighth Circuit stated that summary judgments should only be used sparingly in employment discrimination cases. In this general connection, we note that the Supreme Court has stated that summary judgment is not a "disfavored procedural shortcut" but rather is an important judicial tool designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

In any event, we are in substantial accord with the district court's disposition of the matter, and on that basis, we affirm. On the record before it, the district court concluded

that as Seely indicated in her deposition, her assignment to a 90-day retraining program was not a demotion, there being no diminution of pay, status or benefits during the 90-day program. Nor do we believe that the interplay between Seely and her supervisors leading up to her decision to take early retirement rises to the level of adverse employment action. Bickering in the work place over employment practices between employees and supervisors is not new or novel, and is really quite common. And such does not constitute adverse employment action.

Further, counsel's motion to amend came very late in the day. The case had been on file some two years, counsel had filed one amended complaint, and it was only when counsel, faced with a possible adverse ruling on a summary judgment motion, sought to further amend. *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1091 (10th Cir. 1991). Also, in our view, the record, itself, does not support a claim based on either "retaliation" or "constructive discharge." In this latter connection, Seely in her amended complaint merely stated that she "resigned." And the fact of the matter is that she, after consultation with her husband, decided to opt for early retirement.

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

- 6 -