Melbourne SPAULDING, Plaintiff,

v.

NW HOSPITALITY INVESTMENT
CO., L.L.C. and Days Inn of
America, Inc., Defendants.

Case No. 01–2207–JWL.

United States District Court,
D. Kansas.

June 11, 2002.

Douglas M. Greenwald, MaAnany, Van
Cleave & Phillips, P.A., Kansas City, KS,
for Plaintiff.

Martha A. Peterson, Sloan, Listrom, Ei-
senbarth, Sloan & Glassman, Topeka, KS,
William F. Logan, Foland & Wickens,
P.C., Kansas City, MO, for Defendant.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff filed suit against defendants alleging employment discrimination in violation of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. This matter is presently before the court on defendant Days Inn of America, Inc.'s motion for summary judgment (doc. # 23). As set forth in more detail below, the motion is granted and plaintiff's complaint against defendant Days Inn is dismissed with prejudice.

### I. Facts

The facts pertinent to the motion for summary judgment filed by defendant Days Inn are fairly simple and they are related here in the light most favorable to plaintiff, the nonmoving party. Defendant NW Hospitality Investment Company (hereinafter "NW Hospitality") is a Days Inn franchisee that owns and operates a Days Inn motel in Topeka, Kansas. From July 1999 to December 1999, plaintiff was employed as a security officer at the Days Inn motel in Topeka.

Pursuant to the franchise agreement between NW Hospitality and Days Inn, NW Hospitality is required to "exercise full and complete control over and have full responsibility for [NW Hospitality's] contracts, daily operations, labor relations, employment practices and policies, including, but not limited to, the recruitment, selection, hiring, disciplining, firing, compensation, work rules and schedules of [its] employees." Evidence presented by Days Inn, and uncontroverted by plaintiff, demonstrates that Days Inn was not involved in the management or day-to-day operation of the motel in Topeka, that Days Inn exercised no control over labor relations at the motel, that Days Inn made no decisions concerning any employees at the mo-

tel in Topeka and that Days Inn issued no specific rules regarding employment practices at the motel in Topeka.

Plaintiff highlights that the franchise agreement also requires NW Hospitality to send its managers to various training programs conducted by Days Inn, requires NW Hospitality to participate in various marketing and advertising programs, and requires NW Hospitality to participate in a central reservation system and a general purpose directory in which Days Inn publishes the names and addresses of all its franchisees and facilities. In addition, the agreement permits Days Inn to conduct quality assurance inspections and to audit financial and operating books and records. NW Hospitality is also required to submit to Days Inn monthly reports concerning the performance of the motel in Topeka. Moreover, NW Hospitality is not permitted to materially modify, diminish or expand its motel facility without prior written consent from Days Inn.

The franchise agreement further requires NW Hospitality to "use reasonable efforts to protect, maintain and promote the name 'Days Inn' and its distinguishing characteristics." It prohibits NW Hospitality from permitting its "officers, directors, principals, employees, representatives or guests of the Facility to engage in conduct which is unlawful or damaging to the good will or public image" of Days Inn. Finally, Days Inn has the right to terminate the agreement if NW Hospitality, *inter alia*, engaged in any act or failure to act that in the reasonable judgment of Days Inn is or could be injurious or prejudicial to the goodwill associated with Days Inn.

### II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact"

and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The

nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams*, 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

## III. Discussion

■ To establish a prima facie case for his federal employment discrimination claims against defendant Days Inn, plaintiff is required to prove, *inter alia*, that Days Inn is his employer. *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir.1998) (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1361 (10th Cir.1993)). Courts have struggled with a variety of tests to determine whether a plaintiff has demonstrated an employee-employer relationship for Title VII purposes. *Lockard*, 162 F.3d at 1069. Generally, the Tenth Circuit has identified three approaches for determining whether an entity is the plaintiff's employer for purposes of federal employment discrimination laws: the common law agency inquiry; the "hybrid" common law-economic realities method; and the single-employer or true economic realities test. *Id.*

Under the single-employer test, also known as the integrated enterprise test, courts consider the interrelation of operations; centralized control of labor relations; common management; and common ownership or financial control. *Id.; accord Knowlton*, 189 F.3d at 1184; *Frank*, 3 F.3d at 1362. Underlying the single-employer test is "the requirement 'that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer.'" Lockard, 162 F.3d at 1070.

Unlike the "stringent" common law approach, which "tends to exclude the greatest number of persons from Title VII coverage," courts adopting the single-employer test have emphasized that a "broad interpretation should be given to the employer and employee provisions of Title VII to effect its remedial purpose." *Lockard*, 162 F.3d at 1069 (citations and quotations omitted). The single-employer test is "therefore the approach most urged by plaintiffs in Title VII actions." *Id.* at 1069–70. Although the trend in Title VII cases appears to be in favor adopting the single-employer test, *id.* at 1070, the Tenth Circuit has yet to adopt the test or any other test, having found it unnecessary to do so. *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir.1999) (noting that Circuit has yet to adopt a specific test, but applying single-employer test because both parties and the district court assumed application of the single-employer test); *Lockard*, 162 F.3d at 1069 (declining to adopt single-employer test, but applying it because it was the most lenient test, it was urged by plaintiff, and plaintiff failed to demonstrate employer status even under this lenient standard); *Frank*, 3 F.3d at 1362 (declining to adopt single-employer test

but applying it because the parties agreed it was the most appropriate test); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir.1991) (declining to decide whether to adopt single-employer test because plaintiff could not sustain cause of action even under that lenient standard).

■ Defendant's motion relies on the application of the single-employer test and plaintiff's papers make reference to all three approaches highlighted by the Circuit in *Lockard*. Even assuming, however, that the lenient single-employer test applies here, plaintiff nonetheless has not met his burden of coming forward with sufficient evidence from which a reasonable jury could conclude that Days Inn was his employer. Rather, the record before the court reflects that, as a matter of law, Days Inn cannot be held liable as an employer under the federal anti-discrimination statutes. Summary judgment, therefore, is warranted in favor of Days Inn.

Of the four factors that courts consider under the single-employer approach, the most important factor is whether the putative employer has centralized control of labor relations. *Lockard*, 162 F.3d at 1070; *accord Lambertsen v. Utah Dep't of Corrections*, 79 F.3d 1024, 1029 (10th Cir. 1996). The critical question in that regard is "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Lockard*, 162 F.3d at 1070 (quoting *Frank*, 3 F.3d at 1363). In the record before the court, there is no evidence from which a factfinder could conclude that Days Inn controlled the day-to-day employment decisions at the motel in Topeka or that Days Inn made any decisions regarding plaintiff's employment. In fact, the evidence before the court demonstrates that Days Inn made no decisions concerning employment matters at the motel in Topeka and

issued no specific rules regarding employment practices that the motel was required to follow. *Cf. Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 & n. 7 (10th Cir.1999) (evidence sufficient to support jury's finding of single-employer status where common officers and managers of parent and subsidiaries, acting in their capacity as officers of the parent, conducted an investigation of sexual harassment complaint, removed alleged harasser from his position with subsidiary and simultaneously hired him with another subsidiary and resolved all other matters related to plaintiff's complaint).

Plaintiff urges that the franchise agreement prohibits motel management from "engaging in conduct which is unlawful or damaging to the good will or public image" of Days Inn which, according to plaintiff, presumably would include unlawful acts of employment discrimination. Even assuming, however, that this broad statement contemplated employment matters, the Circuit has expressly held that "broad general policy statements regarding employment matters are not enough" to satisfy the labor relations prong of the single-employer test. *See Frank*, 3 F.3d at 1363. Rather, the evidence must demonstrate that the putative employer controls the day-to-day employment decisions of the immediate employer. *Id.* The general statements in the franchise agreement concerning unlawful or injurious conduct in no way evidence an attempt by Days Inn to exercise day-to-day control over employment decisions. *See id.* (parent corporation's general policy statements concerning equal employment opportunities and fair treatment of subsidiary employees were insufficient to establish requisite control over day-to-day employment decisions); *see also Lockard*, 162 F.3d at 1071 (even though evidence showed that franchisor's policies were utilized at franchisee's restaurant, the existence of the policies were not enough to demonstrate

centralized control of labor relations in the absence of evidence indicating what role, if any, franchisor played in implementing or effecting the policies).

In short, then, there is simply no evidence that Days Inn had control over its franchisee's labor relations and the record is devoid of the type of evidence routinely used to satisfy the "control over labor relations" prong. *See, e.g., Lockard*, 162 F.3d at 1070 (contrasting Second Circuit case where control over labor relations was established by evidence that applications for employment with the subsidiary went through the parent; all personnel status reports were approved by the parent; and subsidiary cleared all major employment decisions with the parent); *Frank*, 3 F.3d at 1363 (contrasting cases where control over labor relations was established by evidence that common officer in parent and subsidiary approved all of subsidiary's hiring decisions; that parent issued personnel policies, paid subsidiary's non-union employees, and was listed as employer on W–2 forms of subsidiary's non-union employees; and that parent issued regimented rules regarding employment practices which subsidiaries were required to follow).

Plaintiff contends that the evidence suggests that the operations of Days Inn and NW Hospitality were interrelated because the franchise agreement gave Days Inn the right to train NW Hospitality's managers, to conduct quality assurance inspections and to audit financial and operating books and records. The Tenth Circuit, however, in holding that a franchisor was not a Title VII employer with respect to the employees of an independently owned franchise, was not persuaded by evidence that the franchisor "may have stringently controlled the manner of its franchisee's operations, conducted frequent inspections, and provided training for franchise em-

ployees" where the franchisor did not have control over its franchisees' labor relations. *See Lockard,* 162 F.3d at 1070 (citing and quoting *Evans,* 936 F.2d at 1090). In fact, the circumstances highlighted by plaintiff are similar to those rejected by the Circuit in *Evans;* "[o]utside of the necessary control over conformity to standard operational details inherent in may franchise settings, [the franchisor's] only real control over [the franchisee] was its power to terminate the franchise." *Evans,* 936 F.2d at 1090.

Plaintiff's evidence, then, falls far short of the type of evidence routinely used to show interrelated operations. *See Frank,* 3, F.3d at 1363 (contrasting cases where interrelated operations was established by evidence that the parent kept subsidiary's books, issued its paychecks, and paid its bills; that parent and subsidiary had common employees, the same headquarters, common advertising, and the parent rented its properties to the subsidiary; and that the parent and subsidiary shared services, equipment, employees and office space, and the parent controlled the subsidiary's payroll and benefit programs); *see also Knowlton,* 189 F.3d at 1184 & n. 7 (evidence sufficient to support jury's finding of single-employer status where entities, inter alia, shared a building, phone system, reception area, office equipment, accounting department, personnel manager, personnel handbook and payroll accounts).

While apparently conceding that Days Inn and NW Hospitality have no common managers, plaintiff suggests that the entities share "management responsibilities" vis-a-vis Days Inn's right to train NW Hospitality's managers, to conduct inspections and to audit financial and operating books. For the reasons set forth above in connection with the discussion of interrelatedness, this argument is rejected. In the absence of any evidence that Days Inn

and NW Hospitality shared common officers or directors, no reasonable factfinder could conclude that the entities had common management. *See Frank,* 3 F.3d at 1364 (contrasting cases where common management was established by evidence that companies shared common officers and directors); *Knowlton,* 189 F.3d at 1184 & n. 7 (evidence sufficient to support jury's finding of single-employer status where all entities were governed by the same persons as their officers and members of their board of directors and the business of the entities was addressed in single, common meetings of the board of directors).

With respect to common ownership, it is undisputed by plaintiff that the motel in Topeka is independently owned by NW Hospitality. Nonetheless, plaintiff contends that this prong is satisfied because Days Inn had "substantial financial control" over NW Hospitality by virtue of its audits and the financial reports that NW Hospitality was required to submit. The courts disagrees. The audits and financial reports are simply part of the "operational details inherent in many franchise settings," *see Evans,* 936 F.2d at 1090, and it is certainly not beyond the normal franchisor-franchisee relationship for the franchisor to require the submission of financial reports and to conduct periodic audits of financial books and records. In short, plaintiff has simply not shown the requisite financial control to establish liability on the part of Days Inn.

■ Considering all four factors together, plaintiff has not come forward with evidence establishing a genuine issue of material fact concerning whether Days Inn was plaintiff's employer. Thus, the court grants Days Inn's motion for summary judgment. One final issue, however, is presented by plaintiff in his papers, wherein he suggests that the nature of the rela-

tionship between NW Hospitality and Days Inn "should be the subject of further discovery." To the extent that plaintiff is contending that summary judgment is premature because discovery has not yet been completed, the argument is rejected. Federal Rule of Civil Procedure 56(f) allows a court to stay or deny a summary judgment motion in order to permit further discovery if the nonmovant states by affidavit that it lacks facts necessary to oppose the motion. *Price v. Western Resources, Inc.,* 232 F.3d 779, 783 (10th Cir.2000). The general principle of Rule 56(f) is that "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The protections of Rule 56(f), however, must be invoked and can be applied only if a party satisfies certain requirements. *Id.* These requirements include the filing of an affidavit furnished by the nonmovant explaining why facts precluding summary judgment cannot be presented, identifying the probable facts not available and what steps have been taken to obtain these facts, and explaining how additional time will enable the nonmovant "to rebut the movant's allegations of no genuine issue of fact." Id.

■ Instead of filing the required affidavit (or satisfying any other requirement of Rule 56(f)), plaintiff's counsel simply suggests the need for additional discovery in the body of his memorandum opposing summary judgment. As a matter of law, this unverified assertion does not comply with Rule 56(f) and results in a waiver. *See id.* In short, because plaintiff has not complied with Rule 56(f), and because summary judgment in favor of Days Inn is otherwise appropriate, the court declines to stay or deny Days Inn's summary judgment motion in order to permit further discovery. *See id.* at 783–84 (Where a party opposing summary judgment seeks additional discovery and fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate.).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Days Inn of America, Inc.'s motion for summary judgment (doc. # 23) is **granted** and plaintiff's complaint against defendant Days Inn of America, Inc. is dismissed with prejudice.

**IT IS SO ORDERED.**